IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA B. HUGHES, | : | CIVIL ACTION NO. **3:CV-06-1649** |
| Plaintiff | : | (Judge Caputo) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security Disability case pursuant to 42 U.S.C. §§ 405(g). The Plaintiff, Patricia B. Hughes, is seeking review of the decision of the Commissioner of Social Security ("Commissioner") which denied her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-433.

## I. PROCEDURAL HISTORY.

The Plaintiff filed an application for DIB on June 30, 2004, alleging an inability to work since January 25, 2002, due to chronic pain, memory loss and upset stomach. (R. 13, 14). Her claim was denied, and a timely request for a hearing was filed. (R. 10, 9). A hearing was conducted before an Administrative Law Judge ("ALJ") on December 15, 2005. (R. 13). Plaintiff, who was represented by counsel, testified. (R. 13). Plaintiff was denied benefits pursuant to the ALJ's decision of January 27, 2006. (R. 13-17). The ALJ issued a decision finding that Plaintiff was not disabled under the Act. (R. 17).

The Plaintiff requested review of the ALJ's decision by the Appeals Council. (R. 5). Said request for review was denied on June 23, 2006, thereby making the ALJ's decision the "final

decision" of the Commissioner.  42 U.S.C. § 405(g). That decision is the subject of this appeal. (R. 5-8).[1]  In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 6 & 10).

## II. STANDARD OF REVIEW.

When reviewing the denial of Social Security Disability Insurance benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity that he
> is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless of whether
> such work exists in the immediate area in which he lives, or whether a

---

[1] There is no dispute that the Plaintiff meets the non-disability requirements for DIB benefits and is insured for benefits until December 31, 2007. (R. 14-16).

>specific job vacancy exists for him, or whether he would be hired if he
>applied for work.  For purposes of the preceding sentence (with
>respect to any individual), "work which exists in the national economy"
>means work which exists in significant numbers either in the
>region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (1990).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999);  *Sassone v. Soc. Sec. Comm.*, 165 Fed. Appx. 954 (3d Cir. 2006)(Non-Precedential).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity."  *See* C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulation No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that she is unable to perform her past relevant work.  *See* 20 C.F.R. § 404.1520(e), 416.920(e).  The Plaintiff bears the burden of demonstrating an inability to return to her past relevant work.  *Plummer*, 186 F.3d at 428.  Then the burden of proceeding shifts to the

Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

The ALJ concluded at step two of the sequential evaluation that the Plaintiff did not have a severe impairment. (R. 15). Thus, the ALJ concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 17). In reaching this determination, the ALJ first found that Plaintiff had not engaged in substantial gainful work activity since her alleged onset date. (R. 17). Next, the ALJ determined that the medical evidence failed to establish that the Plaintiff's chronic right hip pain is a severe impairment within the meaning of the Regulations. (R. 15).

The ALJ noted that at step two in the sequential evaluation, it must be determined whether the Plaintiff has a medically determinable "severe" impairment or combination of impairments that meets the 12 month duration requirement. (R. 14). The ALJ stated that a "medically determinable" impairment must be established by medical evidence, consisting of signs, symptoms, and laboratory findings. (R. 14). "Signs" are defined as abnormalities which can be observed apart from the claimant's statements, and must be shown by medically acceptable diagnostic techniques. (R. 14). Signs are observed by the doctor upon physical or mental examination. (R. 14, citing 20 C.F.R. § 404.1528(b)). "Symptoms" are the patient's own description of her physical or mental impairments. (R. 14, citing 20 C.F.R. § 404.1528(a)). "Laboratory findings" are anatomical, physiological, or psychological phenomena which can be show by the use of laboratory diagnostic

techniques. (R. 14).

The ALJ next noted that statements from the Plaintiff of symptoms alone are not sufficient to establish the existence of a physical or mental impairment. (R. 14, citing 20 C.F.R. § 404.1528(a)). The ALJ opines that "[u]nder no circumstances may the existence of a medically determinable impairment be established on the basis of symptoms alone." (R. 14, citing Social Security Ruling 96-4 and 20 C.F.R. § 404.1529). The symptoms complained of by the Plaintiff must be supported by signs and laboratory findings. (R. 15). Once a medically determinable impairment is found, it is "severe" only if it significantly limits an individual's ability to do basic work activities. (R. 15). The ALJ found that the Plaintiff did not have a medically determinable severe impairment, and did not have to decide whether it significantly limited the plaintiff's ability to do basic work activities (R. 15).

The ALJ determined that the Plaintiff did not have a "severe" impairment, and stopped the sequential evaluation at step two. (R. 15). The ALJ noted that the only evidence of a medically determinable impairment in the record were the Plaintiff's own complaints of pain and symptoms, regarding her right hip and leg, memory loss and upset stomach. (R. 15). The ALJ found that there were no "signs" or "laboratory findings" evidenced in the record that demonstrated a medical impairment that would reasonably cause the Plaintiff's symptoms. (R. 15).

Although the ALJ was not required to proceed further, the ALJ determined that the assessment of Dr. Gibson, the Plaintiff's treating orthopedic physician, would be given almost no weight. (R. 16). The ALJ opined that Dr. Gibson's statements that the Plaintiff was disabled and required certain physical limitations were based solely on the Plaintiff's subjective complaints of

5

pain, and were not supported by objective medical findings (R. 16). The ALJ also stated that "[i]t is apparent that Dr. Gibson's statements that the claimant is "disabled" were made in support of her claim for workers' compensation benefits, which is based on a different standard than that used to determine disability under the Social Security Act." (R. 16).

The ALJ concluded that Dr. Gibson's residual functional capacity assessment of the Plaintiff would be given little weight. (R. 16). The ALJ noted that since there was a lack of objective medical evidence in the record, this assessment was based solely on the Plaintiff's complaints. (R. 16).

The relevant time period for this case is January 25, 2002 (alleged onset date of disability) (R. 14), through January 27, 2006 (date of ALJ's decision). (R. 13-17).

## IV. DISCUSSION.

This appeal involves the denial of Plaintiff's application for DIB. (R. 13-17). Plaintiff filed her application for DIB in June 2004, which was denied in January 2006 by the decision of an ALJ. (R. 13, 17). The issue in this case is whether substantial evidence supports the Commissioner's decision that the Plaintiff was not disabled.

The ALJ found that the Plaintiff's chronic hip pain was not a severe impairment because there were no signs or laboratory findings in the record to substantiate the Plaintiff's complaints of pain. (R. 15). The Plaintiff argues that the ALJ erred by failing to find that her hip pain was a severe impairment. (Doc. 6, page 8). The Plaintiff argues that the second step of the sequential evaluation "may only be used to screen out the de minimis claims." (Internal quotations and citations omitted). (*Id.*). The Plaintiff contends that her hip pain constitutes a severe impairment and that the ALJ should have proceeded further in the sequential evaluation. (*Id.* at 9-10). The Plaintiff

contends that the ALJ was "playing doctor" and should have given the treating orthopedic doctor's opinion more weight. (*Id.* at 8). The Plaintiff also claims that the ALJ erred in failing to order a consultative examination of the Plaintiff and in failing to consult a vocational expert. (*Id.* at 9).

### A. Background

The Plaintiff was born on September 1, 1962. (R. 14). She was 40 years old at the time of the alleged onset date. (R. 14). Thus, Plaintiff is a younger individual under the Regulations. *See* 20 C.F.R. § 404.1563. She has a high school diploma and worked as a carton machine operator.[2] (R. 230, 233). The Plaintiff has not worked since January of 2002, when she fell at work. (R. 233). The fall resulted in pain in the Plaintiff's right hip. (R. 233-36).

The Plaintiff's treating physician is Mark D. Gibson, M.D. (R. 168). The Plaintiff first visited Dr. Gibson on January 31, 2002, nine (9) days after her fall at work. (R. 168). The Plaintiff complained of lateral pain in her right hip. (R. 168). Dr. Gibson noted that there was discomfort to pressure in her right hip area, but that there was no mass lesion, ecchymosis, erythema, or malalignment in that area. (R. 168). Dr. Gibson stated that radiographs of the Plaintiff's hip were normal, and he thought that it was likely the Plaintiff had a muscle/capsule strain in the right hip area. (R. 168). Dr. Gibson recommended a conservative approach to treatment, which included stretching, heat, ultrasound, phonophoresis and time. (R. 168). Dr. Gibson noted that physical therapy should be helpful to the Plaintiff and that she should feel some improvement in a couple of weeks. (R. 168). Dr. Gibson indicated that he would see the Plaintiff again if her right hip pain

---

[2] The ALJ mistakenly stated in his decision that the Plaintiff had a college education. In the transcript of the ALJ hearing, the Plaintiff stated that she has only a high school education. (R. 230).

was not resolved. (R. 14, 168).

On March 1, 2002, Dr. Gibson noted that the Plaintiff's MRI was negative and did not reveal any problems in her right hip area. (R. 167). Dr. Gibson informed the Plaintiff of this by phone, and told her to come in for another visit since she stated that the pain had not improved. (R. 167). Dr. Gibson ordered a bone scan of the hip/pelvis area on March 20, 2002, and also referred her to another physician to explore the possibility of a hernia. (R. 167). The Plaintiff's bone scan was normal, showing no signs of injury, and the Plaintiff did not have a hernia. (R. 163, 160).

Dr. Gibson referred the Plaintiff to a surgeon in Syracuse on May 23, 2002, to explore further options. (R. 166). Dr. Gibson noted on July 17, 2002, that the Plaintiff had received a trochanteric bursal injection that helped with the pain initially, but did not have a great effect overall. (R. 165). Dr. Gibson ruled out trochanteric bursitis at this time. (R. 165). Dr. Gibson ordered a fluoroscopic injection, which did not improve the Plaintiff's condition. (R. 165). Dr. Gibson noted that he did not think surgery for the Plaintiff "makes sense" at that time because there were no objective medical findings to support it, and because the Plaintiff had had little success with the intra-articular injection. (R. 165).

Dr. Gibson continued to order MRIs, x-rays, and bone scans for the Plaintiff over the next year, all of which were normal. (R. 163, 160, 159). Despite the fact that all of her objective medical tests continued to show no abnormality, Dr. Gibson stated, on October 21, 2003, that the Plaintiff was "totally disabled." (R. 159).

The Plaintiff underwent a hysterectomy on November 19, 2003. (R. 107). Eight weeks after the surgery, the Plaintiff's Obstetrics and Gynecology physician stated that she was doing well and

could resume normal activities. (R. 120). The physician also noted that he spoke to the Plaintiff about the possibility of her returning to work, and noted that the Plaintiff informed him she was on disability. (R. 120).

### B.   *Whether the ALJ erred by finding the Plaintiff's right hip pain was not a severe impairment*

The Plaintiff first argues that the ALJ erred in not finding her right hip pain to be a severe impairment. (Doc. 6, p. 8). The Plaintiff contends that, because the threshold for severity under the Regulations is *de minimis*, SSR 88-3c, the ALJ should have found her right hip pain severe. (*Id.*). 1988 WL 236022, *8.

Step two of the ALJ's sequential evaluation is a *de minimis* screening threshold to dispose of groundless claims. *Newell v. Commissioner of Social Security*, 347 F.3d 541, 547 (3d. Cir. 2003). The *Newell* court stated that "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.' *Id*. at 546 (citing SSR 85-28, 1985 SSR LEXIS 19, at *6-7). The "severity regulation" requires a claimant to show that she has an "impairment ... which significantly limits [his or her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). The claimant bears the burden of production and persuasion. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Here, the ALJ found that the Plaintiff did not meet her burden with respect to her right hip pain. (R. 14-15). As discussed above, the record showed no objective medical findings

supporting the Plaintiff's complaints of right hip pain.[3]  (R. 14).

Indeed, as the ALJ noted, the Plaintiff's treating physician, Dr. Gibson, ordered multiple tests for the Plaintiff over a period of two years, and all were normal. (R. 163, 160, 159). Dr. Gibson ordered multiple MRIs and bone scans, and they all were negative.  (R. 163, 160, 159). Significantly, the Plaintiff does not point to a single test that was abnormal or that supported the extent of her claim of right hip pain.  The Plaintiff received treatment; however, Dr. Gibson described it as "conservative" treatment, which was in the form of physical therapy, stretching and a series of injections .  (R. 168).  As stated, Dr. Gibson did not find the Plaintiff to be a suitable candidate for surgery.  (R. 165).  The Plaintiff continued to complain of pain, which had worsened, despite treatment.  (R. 165).

The Plaintiff bears the burden of production and persuasion, and must establish a physical impairment by "medical evidence consisting of signs, symptoms, and laboratory findings" rather than by a statement of symptoms alone.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  20 C.F.R. §§ 404.1508, 416.908.  As the ALJ noted, there have been no signs or laboratory findings to bolster the Plaintiff's pain, and the opinions and notes of Dr. Gibson are based entirely on the Plaintiff's statements of pain.  (R. 16).  Therefore, we find substantial evidence to support the ALJ's finding that the Plaintiff's right hip pain was not a severe impairment.

---

[3] While the Plaintiff testified that she had symptoms of memory los and an upset stomach in addition to her right hip and leg pain, she stated that these two symptoms were side effects from taking Vicodin.  (R. 243-44).  In her Brief, the Plaintiff did not claim that her memory loss and upset stomach symptoms were severe impairments.

### C.  *Whether the ALJ erred in not giving proper weight to the Plaintiff's treating physician*

The Plaintiff argues that the ALJ erred in not giving controlling weight to the opinion of Dr. Gibson.  (Doc. 6, p.9).  The Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310  (3d Cir. 2000).  The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987));  *see also  Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994);  *Jones*, 954 F.2d at 128;  *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989);  *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585.  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.  *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent*, 710 F.2d at 115.

*Id*. at 317-18.  The ALJ is required to evaluate every medical opinion received.  20 C.F.R. § 404.1527(d).  Although he must consider all medical opinions, the better an explanation a

11

source provides for an opinion, particularly through medical signs and laboratory findings, the more weight [the ALJ] will give that opinion. 20 C.F.R. § 404.1527(d)(3). While treating physicians' opinions may be given more weight, there must be relevant evidence to support the opinion. 20 C.F.R. § 404.1527(d). Automatic adoption of the opinion of the treating physician is not required. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

The Plaintiff argues that the ALJ erred in not giving controlling weight to Dr. Gibson's opinion that she was totally disabled. The Plaintiff claims that the ALJ "totally disregarded the opinions of the treating physician. . .in the total absence of any contradictory medical evidence." (Doc. 6, p.9). The ALJ did not "totally disregard" the opinion of Dr. Gibson, but rather, concluded that his opinion could be given only little weight because his medical opinions were based on the Plaintiff's subjective complaints of pain and not on the objective medical evidence. (R. 163, 160, 159). As discussed, Dr. Gibson's opinion that the Plaintiff was disabled had no basis in objective medical evidence such as signs or laboratory findings. (R. 163, 160, 159). The record is rife with documentation of the Plaintiff's complaints of pain, with no supporting medical evidence. (R. 163, 160, 159). As discussed above, Dr. Gibson ordered a battery of tests, throughout two years, which all revealed normal findings. (R. 163, 160, 159). The determination as to whether a claimant is disabled under the Act is reserved for the Commissioner. *See Adorno*, 40 F.3d at 47-48.

Also, the Plaintiff argues that the ALJ disregarded Dr. Gibson's May, 2004, physical assessment evaluations. (Doc. 6, p. 9-10). Dr. Gibson found as follows: the Plaintiff could lift

12

and carry only up to 10 pounds occasionally; sit for 3 to 4 hours per 8 hour workday; walk for 1 to 2 hours per 8 hour workday; use both hands frequently for grasping and fine manipulation; use the left foot continuously but the right foot never; never climb, balance, stoop, crouch, kneel or crawl; continuously hear and speak; frequently reach, handle, finger and feel; occasionally push and pull; and avoid exposure to heights. (Doc. 6, p. 9-10 & R. 184-87). Dr. Gibson's physical capacity assessment was, however, in the form of an evaluation where Dr. Gibson was only required to check boxes and circle choices.[4] (R. 184-87). "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Standing alone, a physical capacities evaluation form, such as the one Dr. Gibson filled out, is not substantial evidence. *Green v. Schweiker*, 749 F. 2d 1066, 1071 n.3 (3d Cir. 1984). As such, there is substantial evidence to support the ALJ's finding that Dr. Gibson's physical capacity assessment was not supported by the medical records. As stated, the objective clinical findings clearly did not support the extent of the physical restrictions that Dr. Gibson identified. (R. 163, 160, 159).

In one sentence, without explanation, the Plaintiff also argues that the ALJ erred in failing to order a consultative examination. (Doc. 6 p. 9). Chapter 20 C.F.R. § 404.1519a(b) explains situations in which a consultative examination is required. The provision states:

---

[4] The ALJ was not required to reach this part of the analysis with respect to the Plaintiff's Residual Functional Capacity, however, because his evaluation ended at step two. Nevertheless, the ALJ concluded that this assessment of the Plaintiff's residual functional capacity would be given little, if any, weight. (R. 16). We also note that, on the assessment form, Dr. Gibson indicated that the Plaintiff's diagnosis was "chronic soft tissue injury right hip." (R. 183).

> (b) Situations requiring a consultative examination. A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situations, including but not limited to the situations listed below, will normally require a consultative examination:
> (1) The additional evidence needed is not contained in the records of your medical sources;
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or
> (5) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a.

Here, the ALJ did not lack the medical evidence needed to make his decision. (R. 157-68). Also, there were no availability problems with the medical evidence, conflicts, inconsistencies or ambiguities, or a change in the Plaintiff's condition. (R. 157-68). We find that the ALJ was not required to order a consultative examination in this case and did not err in failing to do so.

The Plaintiff finally contends that the ALJ erred in failing to consult a vocational expert. (Doc. 6, p. 10). However, a vocational expert's assessment is not required until Step five of the sequential evaluation. 20 C.F.R. 404.1520(a)(4)(v) and (g)(1)-(2). In this case, the ALJ found that the Plaintiff did not have a severe impairment at Step two, and therefore proceeded no further in the sequential evaluation. (R. 15-16). We find that the ALJ did not err by not consulting a vocational expert.

14

**V. Recommendation.**

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal of the ALJ's decision be **DENIED**.

                                        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: June 6, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA B. HUGHES, | : | CIVIL ACTION NO. **3:CV-06-1649** |
| Plaintiff | : | (Judge Caputo) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 6, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                  **s/ Thomas M. Blewitt**
                                  **THOMAS M. BLEWITT**
                                  **United States Magistrate Judge**

**Dated: June 6, 2007**